UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN KAILIN, as parent and next friend of ETHAN KAILIN, a minor, )<br>)<br>) | |
| Plaintiff, ) | |
| ) | No. 19 C 4703 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| CITY OF GURNEE, ) | |
| ) | |
| Defendant. ) | |

# OPINION AND ORDER

Plaintiff Steven Kailin ("Steven"), as parent and next friend of Ethan Kailin ("Ethan"), a minor, filed a complaint against Defendant the Village of Gurnee (the "Village"), after School Resource Officer Jack Metcalf ordered Ethan to perform community service at his high school.[1] Steven contends that the Village failed to reasonably accommodate Ethan's autism in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The Village now moves for summary judgment on the ADA claim. Because the record does not allow for the inference that the Village denied Ethan a reasonable accommodation, the Court grants the Village's motion and enters judgment for it on the ADA claim.

## BACKGROUND[2]

Ethan, an autistic student, attended Warren Township High School ("Warren Township")

---

[1] Steven improperly named the Village of Gurnee as the City of Gurnee.

[2] The Court derives the facts set forth in this section from the Village's Local Rule 56.1 Statement of Undisputed Material Facts. Steven failed to participate in the drafting of a joint statement of undisputed facts, as required by the Court's summary judgment procedures, and the Court previously found that Steven waived any response to the Village's statement of undisputed facts, Doc. 64; *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) ("According to well-established Seventh Circuit law, that noncompliance [with the court's summary judgment procedures] meant that the district court could exercise its discretion to accept Kreg's statements of fact as undisputed."). The Court takes the Village's facts in the light most favorable to Steven, the non-movant.

in Gurnee, Illinois. On September 13, 2017, during a passing period, Ethan inserted himself into an ongoing argument and slapped a student who had stated that Ethan was gay. Ethan then proceeded to his homeroom, at which time he became increasingly frustrated and angry. His behavior in homeroom, in addition to his slapping the student in the hallway, resulted in a three-day school suspension.

Warren Township Dean Ritcher brought the September 13 incident to the attention of Metcalf, a police officer with the Gurnee Police Department who worked as the School Resource Officer at Warren Township. Ritcher also played Metcalf a video of the slapping incident. Ritcher relayed that the parents of the student Ethan slapped were upset, which prompted Metcalf to contact the student's father. The father indicated that his son and Ethan had ongoing problems and that he wanted to pursue charges against Ethan. Metcalf also interviewed the student Ethan slapped and spoke with Ethan's case manager about the incident. The case manager knew Ethan and the contents of his individualized educational plan ("IEP"). The case manager told Metcalf that Ethan understood the difference between right and wrong and could perform community service, such as sweeping or picking up trash.

Considering the totality of the circumstances, including Ethan's autism and the conversation Metcalf had with Ethan's case manager, Metcalf determined that instead of arresting and charging Ethan with battery for slapping the other student, Ethan should participate in a diversionary program and perform community service. Metcalf then contacted Ethan's parents, suggesting that Ethan perform community service with his family at the Village's "Clean the Trails" event. Because the Kailins could not participate in that event, Metcalf suggested that Ethan pick up garbage around the Warren Township football field and parking lot and sweep the walkway leading to the football field. The Kailins agreed to this proposal,

2

bringing him to Warren Township during school hours on September 19. Ethan performed the required community service for two hours under Metcalf's supervision. During this time, Ethan's case manager was available onsite in case Ethan had an outburst.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

To succeed on a claim under Title II of the ADA, Steven must establish that: (1) Ethan is a "qualified individual with a disability;" (2) the Village denied Ethan "the benefits of the services, programs, or activities of a public entity" or "otherwise subjected [him] to discrimination by such an entity;" and (3) Ethan was discriminated against "by reason of" his disability. *Hildreth v. Butler*, 960 F.3d 420, 430 (7th Cir. 2020) (quoting *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015)). Steven may establish discrimination in one of three ways: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). Steven's ADA claim also requires him to demonstrate but for causation. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 754 (7th Cir. 2006) ("[T]he ADA regulation . . . asks whether a modification is 'necessary to avoid discrimination on the basis of disability.' Framed by our cases as a causation inquiry, the element is satisfied only when the plaintiff shows that, 'but for' his disability, he would have been able to access the services or benefits desired." (citations omitted)).

Steven claims that the Village did not reasonably accommodate Ethan's disability because Metcalf did not allow Ethan's parents to be present while he performed community service at Warren Township.[3] The Village, on the other hand, argues that no evidence supports this contention given that Metcalf accommodated Ethan's disability by requiring him to perform community service in lieu of charging and arresting him for battery, and the ADA does not

---

[3] Steven testified that Metcalf refused the Kailins' request to be present while Ethan performed community service and that Ethan's IEP required Ethan to have a shadow while at school. But because Steven failed to comply with the Court's summary judgment procedures, as the Court previously noted, he waived his ability to present these facts to the Court. *See* Doc. 64.

require anything more. The Village contends that Metcalf properly considered Ethan's autism and provided a reasonable accommodation to him because of it: providing the alternative of performing community service instead of being arrested and charged with battery. Steven does not point to any evidence in the record or even provide any argument that would support a finding that the Village did not reasonably accommodate Ethan's disability by allowing Ethan to perform community service in lieu of being charged and arrested for battery. *Cf. Ravenna v. Vill. of Skokie*, 388 F. Supp. 3d 999, 1009 (N.D. Ill. 2019) ("[A] reasonable jury could find that Skokie's policy requiring arrests for misdemeanor offenses, as applied to the misdemeanor disorderly conduct complaint against Ravenna, exhibits deliberate indifference to Ravenna's disability. This case likely would have been avoided if Skokie had issued a summons rather than subjecting her to the alleged violence and indignity of arrest.").

Instead, the evidence only supports a conclusion that Metcalf did accommodate Ethan's disability in determining the proper course of action in response to the slapping incident and the other parents' desire to press charges. When the Kailins could not participate in the first community service option Metcalf suggested, Metcalf offered an alternative option at the school, to which the Kailins agreed. Metcalf personally oversaw Ethan performing the community service, and he ensured that Ethan's case manager was available onsite in case Ethan had any outbursts. While the Kailins may have preferred additional accommodations, such as being present while Ethan performed the community service, "[t]he question is not whether other modifications could have been made, . . . but whether the accommodations made were reasonable." *Hildreth*, 960 F.3d at 431; *see also Murphy v. Kamphuis*, 858 F. App'x 939, 941 (7th Cir. 2021) ("But failing to provide reasonable accommodations constitutes disability discrimination only if those accommodations were necessary to obtain access to the service or

5

program. While he undoubtedly expressed his desire for more library time, Murphy has not introduced any evidence that he *needed* that time to prepare legal documents."). Because Steven has not pointed to any evidence suggesting that the Village did not make reasonable accommodations in determining how to address the appropriate punishment for Ethan slapping another student, Steven cannot prevail on his ADA claim.

Although this resolves the only pending claim, Steven requests that, if the Court finds that he cannot prevail on his ADA claim, that the Court provide him leave to amend his complaint to add a claim for violation of the Rehabilitation Act. Steven contends that a Rehabilitation Act claim would not be futile because it does not require but for causation. This, however, incorrectly states the law: both the ADA and Rehabilitation Act require proof of but for causation. *See A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (requiring proof of but for causation for both ADA and Rehabilitation Act claims). Further, Steven's request to amend his complaint comes much too late. Steven failed to amend his complaint within the time provided by the Court and never requested an extension of that time, the parties completed discovery in June 2021, Steven should have known of the basis for a Rehabilitation Act claim from the initiation of the case, and his request appears calculated to avoid the consequences of an adverse judgment. *See Kleinhans v. Lisle Sav. Profit Sharing Tr.*, 810 F.2d 618, 625–26 (7th Cir. 1987) (denying leave to amend where the plaintiff requested leave to amend after the defendants moved for summary judgment, the proposed amendment was based on information known to the plaintiff at the time he filed his original complaint, discovery had closed, and it appeared that the plaintiff sought leave to amend "to avoid the effect of summary judgment"). Therefore, the Court denies Steven's request for leave to amend, bringing a close to this case.

## CONCLUSION

For the foregoing reasons, the Court grants the Village's motion for summary judgment [57]. The Court enters judgment for the Village on Steven's ADA claim (Count III) and terminates this case.

Dated: January 10, 2022

_____
SARA L. ELLIS
United States District Judge